LTL ATTORNEYS LLP
Joe Tuffaha (SBN 253723)
  joe.tuffaha@ltlattorneys.com
300 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone:  (213) 612-8900
Facsimile:  (213) 612-3773

VORYS, SATER, SEYMOUR AND PEASE LLP
Adam C. Sherman (SBN 224979)
  acsherman@vorys.com
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH  45202
Telephone:  (513) 723-4680
Facsimile:  (513) 852-8468

Attorneys for Plaintiffs HERBALIFE
INTERNATIONAL OF AMERICA,
INC. and HERBALIFE
INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada corporation, and HERBALIFE INTERNATIONAL, INC. a Nevada corporation,<br><br>              Plaintiffs,<br><br>      v.<br><br>ALYSON McGARITY, an individual doing business as "mikenalyson27" on the website www.ebay.com, and DOES 1-10,<br><br>             Defendants. | Case No:  2:18-cv-5455<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C § 1114; 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(c); TORTIOUS INTERFERENCE AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Herbalife International of America, Inc. and Herbalife International, Inc. (collectively, "Plaintiffs") bring this action against Defendant Alyson McGarity ("McGarity") (d/b/a "mikenalyson27" on the website www.ebay.com ("eBay")) and John Does 1-10 ("Doe Defendants") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition in violation of 15 U.S.C. § 1125(a); trademark dilution in violation of 15 U.S.C. § 1125(c); common law trademark infringement; unfair competition in violation of Cal. Bus. and Prof. Code § 17200;  and tortious interference with contracts and business relationships.  These claims arise from Defendants' misappropriation of Plaintiffs' trademarks in connection with Defendants' unlawful and unauthorized sale of materially different and non-genuine Herbalife products on the Internet to unwitting customers.  In support of their complaint, Plaintiffs allege as follows:

## PARTIES

1.     Herbalife International of America, Inc. ("Herbalife") is a Nevada corporation with its principal place of business in Los Angeles, California.

2.     Herbalife International, Inc. ("Herbalife International") is a Nevada corporation with its principal place of business in Los Angeles, California.

3.     McGarity is an individual who, on information and belief, resides at 16205 NE 32nd Street, Vancouver, Washington 98682-3674 and may be served with process there or anywhere else she may be found.

4.     The true names, involvement, and capacities, whether individual, corporate, associated or otherwise, of Doe Defendants 1 through 10 are unknown to Plaintiffs.  Therefore, Plaintiffs sue these defendants by a fictitious name.  Plaintiffs are informed and believe, and on that basis allege, that the Doe Defendants include persons and entities assisting or acting in concert with McGarity in connection with the actions complained of herein and include persons

and entities that are responsible in some manner for the events and occurrences referred to herein or are otherwise interested in the outcome of this dispute. When the true names, involvement, and capacities of these parties are ascertained, Plaintiffs will seek leave to amend this Complaint accordingly.

## **JURISDICTION**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338 and 28 U.S.C. § 1367. Plaintiffs' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and Plaintiffs' claims arising under the laws of the State of California are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court has personal jurisdiction because the Defendants purposefully availed themselves of the privilege of conducting activities and causing a consequence in the State of California by, among other things, advertising and selling infringing products to consumers within California through one or more highly interactive commercial websites. The eBay storefront through which the Defendants have sold and are selling infringing products shows feedback from more than 41,000 eBay users who purchased products from the storefront, rendering it highly likely that Defendants shipped infringing products into California.

7. This Court also has personal jurisdiction because Defendant McGarity previously entered into a contract with for the purpose of becoming an Independent Herbalife Distributor. Under the contract, which was subsequently terminated, McGarity agreed to submit to the jurisdiction of state and federal courts in California.

8. This Court also has personal jurisdiction over Defendants because they are intentionally engaging in infringing activities with the intent of causing injury to Herbalife, which they know is located in California.

## VENUE

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Plaintiffs and Their Trademarks

10.      Herbalife is a direct selling company that provides nutrition, weight-management, energy and fitness, and personal care products (hereinafter, "Herbalife products") in more than 90 countries around the world, including the United States.

11.      Herbalife products are available to United States consumers exclusively through Herbalife Independent Herbalife Distributors ("Herbalife Distributors" or "Distributors"), who are independent contractors authorized and trained by Herbalife to market and sell Herbalife products.

12.      Plaintiffs devote a significant amount of time, energy, and resources to protecting the value of their brands, products, name, and reputation.   By permitting Herbalife products to be distributed exclusively through by Distributors, Herbalife ensures that its customers receive personal attention, accurate information about Herbalife products, and guidance for safe and proper use of Herbalife products. Distributors also give customers personal encouragement that helps customers follow their nutritional programs and achieve their nutritional or weight-loss goals. Distributors are also responsible for preserving the integrity of Herbalife products through proper storage and other measures designed to ensure that customers receive fresh and undamaged products.   In the highly competitive nutrition market, quality is a fundamental part of the consumer's decision to purchase a product.

13.     To promote and protect the Herbalife brand, Herbalife International has registered numerous trademarks with the United States Patent and Trademark Office.  These trademarks include, but are not limited to, HERBALIFE® (U.S. Trademark Registration Nos. 4,402,483, 3,324,677, 2,512,368, 1,969,346, 1,811,780, 1,254,211), HERBALIFE24® (U.S. Trademark Registration No. 4,647,525), HERBALIFELINE® (U.S. Trademark Registration No. 1,406,425), CELL ACTIVATOR® (U.S. Trademark Registration No. 3,116,689), TRI-SHIELD® (U.S. Trademark Registration No. 3,137,237), XTRA-CAL® (U.S. Trademark Registration No. 3,739,538), PROLESSA® (U.S. Trademark Registration No. 4,301,688), THERMOBOND® (U.S. Trademark Registration No. 1,934,165), and TOTAL CONTROL® (U.S. Trademark Registration No. 2,832,678) (collectively, the "Herbalife Registered Trademarks").

14.     Herbalife International owns the Herbalife Registered Trademarks and has licensed them to Herbalife.  Through an agreement with Herbalife International, Herbalife also has the right to enforce and collect past and future damages for the infringement of the Herbalife Registered Trademarks throughout the United States.

15.     The registration for each of the Herbalife Registered Trademarks is valid, subsisting, and in full force and effect.  Pursuant to 15 U.S.C. § 1065, the Herbalife Registered Trademarks serve as conclusive evidence of  Herbalife International's ownership of the marks and Plaintiffs' exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of the Herbalife products identified in the registrations.  *See* 15 U.S.C. § 1115(b).

16.     Herbalife actively uses, advertises, and markets all of the Herbalife Registered Trademarks in commerce throughout the United States.

17.     Due to the superior quality and exclusive distribution of Herbalife products, and because Herbalife is recognized as th source of high quality products, the Herbalife Registered Trademarks have substantial value.

### Plaintiffs Exercise Strict Quality Controls Over the Production and Distribution of Herbalife Products and Provide a Guarantee for Products Purchased From Distributors

18.     To maintain quality controls over Herbalife products, Herbalife allows Herbalife products to be sold in the United States only by itself or by Herbalife Distributors.   Herbalife's ability to maintain quality controls is essential to the integrity and safety of Herbalife products, as well as to the value of the Herbalife Registered Trademarks.

19.     By contract, Distributors are authorized to sell Herbalife products only in certain channels.   Distributors are also required by contract to follow Herbalife's sales practices, policies, and Rules of Conduct (collectively, the "Herbalife Rules"), which require Distributors to take various actions and exercise various quality controls.   Herbalife enforces the quality controls established in its Rules.

20.     The Herbalife Rules emphasize the importance of an interpersonal relationship between customers and Distributors and require that a Distributor be assigned to each customer that purchases Herbalife products.   When selling or providing samples of Herbalife products, Distributors are required to provide directions for the safe and proper use of the products.   In order to further ensure the safety of its customers, Herbalife also instructs Distributors to recommend that customers with medical conditions or who are under medical treatment seek the advice of a physician before changing their diet.   The Herbalife Rules strictly prohibit Distributors from providing false or misleading information in connection with the distribution of Herbalife products.

21.    To ensure that customers receive products of the quality that they have come to expect from Herbalife, Distributors are prohibited from altering any Herbalife product, label, or accompanying literature.  Distributors are also required to follow handling and storage instructions for each Herbalife product.

22.    After completion of a sale, the Herbalife Rules require Distributors to provide their customers with retail order forms listing the product sold, as well as the Distributor's name and contact information.  The Herbalife Rules also require Distributors to retain copies of all retail receipts for two years following a customer's purchase.  These requirements facilitate communication between the customer and the Distributor with respect to any questions the customer has about the Herbalife product that he or she purchased and enables contact between the customer and the Distributor relating to consumer safety issues, including product recalls.

23.    Herbalife also provides customers who purchase Herbalife products through authorized chains of distribution with a Satisfaction Guarantee, which allows a customer who is dissatisfied with an Herbalife product to receive a refund of the purchase price within 30 days after receipt of the product (the "Satisfaction Guarantee").  Each Herbalife Distributor is required to honor the Satisfaction Guarantee for customers who purchased their Herbalife products from that Distributor.

24.    Because Herbalife cannot ensure the quality of products purchased outside of authorized chains of distribution, the Satisfaction Guarantee does not apply to products that are purchased from unauthorized sellers, such as non-Distributors.

25.    To maintain the quality of its products, Herbalife also prohibits the sale of Herbalife products over the Internet, other than through a designated GoHerbalife platform.  This prohibition ensures that customers always receive products that are shipped directly from Herbalife or an Herbalife Distributor.

Herbalife's prohibition on sales over the Internet includes sales on auction websites such as eBay or www.amazon.com ("Amazon").

26.     The Herbalife Rules also prohibit Distributors from selling or providing Herbalife products to non-Distributors who resell or intend to resell the products.

### Defendants' Illegal Sale of Herbalife Products

27.     On or about April 30, 2002, McGarity entered into a membership agreement ("Distributor Agreement") with Herbalife whereby she agreed, among other things, to abide by the Herbalife Rules in exchange for authorization to sell Herbalife products.  McGarity's Herbalife Distributorship was terminated on May 5, 2008 for non-renewal.

28.     Since that time McGarity has not been an Herbalife Distributor, and has thus not been authorized to sell Herbalife products.

29.     Upon information and belief, sometime during or prior to January 2016, one or more of the Defendants began selling products bearing the Herbalife Registered Trademarks through a storefront on eBay called "mikenalyson27." Herbalife discovered these sales in the course of policing the Internet for listings of Herbalife products.

30.     On January 27, 2016, Herbalife—through counsel—sent a cease-and-desist letter through eBay's messaging system to the "mikenalyson27" storefront demanding that the storefront cease selling Herbalife products.  Herbalife did not receive any response, and Herbalife products were not removed from the "mikenalyson27" storefront.

31.     To obtain information regarding the individual(s) and entity(ies) operating the "mikenalyson27" storefront, Herbalife coordinated the purchase of a product from the storefront in February 2016.

32.     Based on the return address listed on the package used to ship the product purchased from the "mikenalyson27" storefront, as well as payment

information obtained through the transaction and additional investigation, Herbalife identified McGarity as an operator of the "mikenalyson27" storefront.

33.    On February 10, 2016, Herbalife sent another cease-and-desist letter to McGarity—this time to her home address.  Once again, Herbalife did not receive any response to its letter.

34.    As of the time of filing, Defendants continue to sell substantial amounts of Herbalife products through their "mikenalyson27" storefront.

**Defendants' Illegal Sale of Herbalife Products**

35.    Defendants, without authorization from Plaintiffs have sold—and are selling—products bearing the Herbalife Registered Trademarks through various channels, including on eBay.  On information and belief, Defendants are also selling Herbalife products through other channels.

36.    The Herbalife products Defendants are selling are not genuine Herbalife products because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Herbalife's quality control procedures that Distributors must follow.

37.    As a result, through their unauthorized use of the Herbalife Registered Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same customer benefits and quality controls as genuine Herbalife products.  In reality, however, the products sold by Defendants are materially different from genuine and authentic Herbalife products.

**Defendants are Tortiously Interfering with**

**Herbalife's Agreements With Its Distributors**

38.    Upon information and belief, Defendants have purchased Herbalife products from Herbalife Distributors for the purpose of reselling them on the Internet.

39.    Defendants knew that Herbalife's agreements with its Distributors prohibit the sale of Herbalife products to non-Distributors for the purpose of resale,

as well as to individuals or entities Distributors know, or have reason to know, intend to resell the products.

40.    Defendants knew this, among other reasons, because Herbalife informed McGarity in cease-and-desist letters dated January 27, 2016, and February 10, 2016, that its contracts with Distributors prohibit Distributors from selling Herbalife products to customers who intend to resell the products. McGarity also separately knew of this prohibition because she herself was an Herbalife Distributor before her Distributorship was terminated in 2008.

41.    Upon information and belief, Defendants willfully and knowingly induced unknown Herbalife Distributors to breach their agreements with Herbalife so that Defendants could acquire Herbalife products and resell them for profit.

### Plaintiffs Have Suffered Substantial Harm
### As A Result of Defendants' Conduct

42.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their quality control procedures, to the Herbalife Registered Trademarks, and to the goodwill associated with the Herbalife brand.

43.    Defendants' conduct is knowing, intentional, willful, malicious, wanton, and contrary to law.

44.    Plaintiffs are entitled to injunctive relief because Defendants will otherwise continue to sell products bearing the Herbalife Registered Trademarks that are materially different from Herbalife products sold by Distributors and do not abide by Herbalife's quality controls. Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to Plaintiffs' goodwill; and has caused and will continue to cause irreparable harm to the goodwill associated with the Herbalife brand and significant consumer confusion.

45.   In the last year, from June 16, 2017 through June 16, 2018, Plaintiffs sold over $132,000 of infringing Herbalife products on eBay through the "mikenalyson27" storefront.

## FIRST CAUSE OF ACTION

### Trademark Infringement

### 15 U.S.C. § 1114

46.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

47.   Plaintiffs are the owner and licensee of the Herbalife Registered Trademarks.

48.   Plaintiffs have registered the Herbalife Registered Trademarks with the United States Patent and Trademark Office.

49.   The Herbalife Registered Trademarks are valid and subsisting trademarks in full force and effect.

50.   Defendants willfully and knowingly used, and continue to use, the Herbalife Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

51.   The products Defendants sell bearing the Herbalife Registered Trademarks are not authorized for sale by Plaintiffs.

52.   Defendants' use of the Herbalife Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as products legitimately bearing the Herbalife Registered Trademarks, and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

53.   Defendants' use of the Herbalife Registered Trademarks in connection with their sale of Herbalife products is likely to cause confusion, cause mistake, or

deceive because it suggests that the products Defendants offer for sale are genuine and authentic Herbalife products.

54.     The products sold by Defendants are not, in fact, genuine and authentic Herbalife brand products.   The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Herbalife's quality control procedures that Distributors must follow.

55.     Defendants' unauthorized use of the Herbalife Registered Trademarks has materially damaged the value of the Herbalife Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Herbalife Registered Trademarks.

56.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

57.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Herbalife Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

58.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

59.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Herbalife Registered Trademarks.

## SECOND CAUSE OF ACTION

### False Advertising

### 15 U.S.C. § 1125(a)(1)(B)

60.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.     Plaintiffs are the owner and licensee of the Herbalife Registered Trademarks.

62.     Plaintiffs have registered the Herbalife Registered Trademarks with the United States Patent and Trademark Office.

63.     The Herbalife Registered Trademarks are valid and subsisting trademarks in full force and effect.

64.     Defendants willfully and knowingly used, and continue to use, the Herbalife Registered Trademarks in interstate commerce, including through their product listings on eBay, for the purpose of advertising, promoting, and selling products bearing the Herbalife Registered Trademarks without the consent of Herbalife.

65.     Defendants' advertisements and promotions of their products unlawfully using the Herbalife Registered Trademarks have been disseminated to the relevant purchasing public.

66.     Defendants' use of the Herbalife Registered Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive because it falsely suggests that the products offered for sale by Defendants are genuine and authentic products, and originate from, or are sponsored by, authorized by, or otherwise connected with Herbalife when they are not.

67.     Defendants' unauthorized and deceptive use of the Herbalife Registered Trademarks in their eBay listings is material and likely to influence customers to purchase the product.

68.     Defendants' unauthorized use of the Herbalife Registered Trademarks in advertising, and otherwise, infringes on the Herbalife Registered Trademarks.

69.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

70.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Herbalife Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

71.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

72.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a).

### THIRD CAUSE OF ACTION

### Unfair Competition

### 15 U.S.C. § 1125(a)

73.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74.    Plaintiffs are the owner and licensee of the Herbalife Registered Trademarks.

75.    Plaintiffs have registered the Herbalife Registered Trademarks with the United States Patent and Trademark Office.

76.    The Herbalife Registered Trademarks are valid and subsisting trademarks in full force and effect.

77.    Defendants willfully and knowingly used, and continue to use, the Herbalife Registered Trademarks in commerce for the purpose of selling Herbalife products on the Internet without Plaintiffs' consent.

78.    The products Defendants sell bearing the Herbalife Registered Trademarks are not authorized for sale by Plaintiffs.

79.    Defendants' use of the Herbalife Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as products legitimately bearing the Herbalife Registered

Trademarks, and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs when they are not.

80. Defendants' use of the Herbalife Registered Trademarks in connection with their sale of Herbalife products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Herbalife products when they are not.

81. Defendants' unauthorized sale of products bearing the Herbalife Registered Trademarks and unauthorized use of the Herbalife Registered Trademarks in advertising infringes on the Herbalife Registered Trademarks.

82. Defendants' unauthorized sale of products bearing the Herbalife Registered Trademarks and unauthorized use of the Herbalife Registered Trademarks in advertising has materially damaged the value of the Herbalife Registered Trademarks and has caused significant damages to Plaintiffs' business relations.

83. As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

84. Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Herbalife Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

85. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

86. Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION

### Trademark Dilution

### 15 U.S.C. § 1125(c)

87.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.   The Herbalife Registered Trademarks are valid and subsisting trademarks in full force and effect.

89.   Herbalife International is the owner of the HERBALIFE® trademark and has licensed the trademark to Herbalife.  Herbalife has expended substantial time, effort, money, and resources advertising and promoting products and services under the HERBALIFE® trademark.  As such, the HERBALIFE® trademark is the means by which Herbalife products and services are distinguished from others in the marketplace.

90.   The HERBALIFE® trademark is inherently distinctive, and as a result of Herbalife's long, continuous, and exclusive use of the HERBALIFE® trademark, it has acquired a secondary meaning associated by purchasers and the public with Herbalife's products and services.

91.   Herbalife is widely recognized as the designated source of goods bearing the HERBALIFE® trademark.

92.   After the HERBALIFE® trademark became famous, Defendants willfully used the HERBALIFE® trademark in connection with the unauthorized and illegal sale of products.  Because the products sold by Defendants are not, in fact, genuine and authentic Herbalife products, Defendants' sales have and will continue to cause dilution of the distinctive quality of the HERBALIFE® trademark by lessening the public's ability to identify and distinguish genuine Herbalife products.

93.   Defendants' unlawful actions have harmed the reputation and goodwill associated with the HERBALIFE® trademark, and Herbalife has suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine Herbalife products.

94.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

95.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

96.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a).

## FIFTH CAUSE OF ACTION

### Common Law Trademark Infringement

97.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     This claim arises under the common law of the State of California.

99.     Plaintiffs are the owner and licensee of the Herbalife Registered Trademarks.

100.    Plaintiffs have registered the Herbalife Registered Trademarks with the United States Patent and Trademark Office.

101.    The Herbalife Registered Trademarks are valid and subsisting trademarks in full force and effect.

102.    Defendants willfully and knowingly used, and continue to use, the Herbalife Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

103.    The products Defendants sell bearing the Herbalife Registered Trademarks are not authorized for sale by Plaintiffs.

104.    Defendants' use of the Herbalife Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as products legitimately bearing the Herbalife Registered

Trademarks, and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

105.   Defendants' use of the Herbalife Registered Trademarks in connection with their sale of Herbalife products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Herbalife products.

106.   The products sold by Defendants are not, in fact, genuine and authentic Herbalife brand products.   The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and do not abide by Herbalife's quality control procedures that Distributors must follow.

107.   Defendants' unauthorized use of the Herbalife Registered Trademarks has materially damaged the value of the Herbalife Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Herbalife Registered Trademarks.

108.   As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

109.   Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Herbalife Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

110.   In harming Plaintiffs, Defendants have acted with willful misconduct and actual malice.   Accordingly, Plaintiffs are entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### Unfair Competition in Violation of Business and Professions Code § 17200, *et seq.*

111.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112.   This claim arises under the laws of the State of California.

113.   Defendants' obtaining of Herbalife products through unlawful means and subsequent distribution or sale of the products constitutes an unfair and/or fraudulent business practice, as described in California Business and Professions Code § 17200 *et seq.* as these actions are likely to deceive and mislead the public.

114.   Defendants' acts of unfair competition have caused and will continue to cause Plaintiffs irreparable harm.  Plaintiffs have no adequate remedy at law against Defendants' unfair competition.

115.   Plaintiffs are entitled to judgment enjoining and restraining Defendants from engaging in further acts of infringement and unfair competition.

## SEVENTH CAUSE OF ACTION

### Tortious Interference with Contracts and Business Relationships

116.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

117.   This claim arises under the laws of the State of California.

118.   Herbalife has contracts and business relationships with its Distributors, who have a contractual right to sell Herbalife products in accordance with the Herbalife Rules.

119.   Herbalife's contracts with its Distributors prohibit Distributors from selling or providing Herbalife products to non-Distributors who intend to resell them.

120.   Defendants had knowledge of Herbalife's contracts and business relationships with its Distributors.  Specifically, McGarity is a former Herbalife

Distributor who is familiar with Herbalife's contractual restrictions, including the prohibitions against sales to resellers. Additionally, Herbalife informed McGarity, via cease-and-desist letters sent by counsel on January 27, 2016, and February 10, 2016, that Herbalife's contracts with its Distributors prohibit the sale of Herbalife products to individuals, such as McGarity, that intend to resell the products outside of Plaintiffs' authorized channels of distribution.

121. Defendants intentionally interfered with the contracts and business relationships between Herbalife and its Distributors by purchasing products from Distributors for the purpose of reselling the products on the Internet without Plaintiffs' permission.

122. By encouraging and providing the means by which Distributors may conduct unauthorized sales of Herbalife products on the Internet, Defendants have solicited and directly caused the breach of Herbalife's contracts with its Distributors.

123. Defendants have no legal right, privilege or justification for their conduct.

124. As a direct and proximate result of Defendants' intentional interference with Herbalife's contracts, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury.

125. Defendants' acts were willful, malicious, oppressive, and undertaken with the conscious intent to deprive Plaintiffs of their rights and property, thereby entitling Plaintiffs to exemplary damages in addition to all other damages sustained thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief and judgment as follows:

A. Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial, but in excess of $550,000, including, but not limited to, compensatory damages, statutory damages, treble damages, restitution,

disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.     A permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Herbalife products,

ii)     Prohibiting the Enjoined Parties from using any of the Herbalife Registered Trademarks in any manner, including advertising on the Internet,

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Herbalife products as well as any products bearing any of the Herbalife Registered Trademarks,

iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Herbalife Registered Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites or storefronts any reference to

any of Herbalife's products, or any of the Herbalife Registered Trademarks,

vi)   Requiring the Enjoined Parties to take all action, including but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove from the Internet any of the Herbalife Registered Trademarks which associate Herbalife's products or the Herbalife Registered Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts,

vii)   Requiring the Enjoined Parties to take all action to remove the Herbalife Registered Trademarks from the Internet, including from the website www.ebay.com;

C.   An award of attorneys' fees, costs, and expenses; and

D.   Such other and further relief as the Court deems just, equitable and proper.

Dated: June 19, 2018                    Respectfully submitted,


By:      /s/ Joe Tuffaha

Joe Tuffaha
LTL Attorneys LLP
joe.tuffaha@ltlattorneys.com
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Telephone:  213-612-8900
Facsimile:  213-612-3773
joe.tuffaha@ltlattorneys.com

Adam C. Sherman
acsherman@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street

Suite 3500, Great American Tower
Cincinnati, Ohio  45202
Telephone:  (513) 723-4680
Facsimile:  (513) 852-8468

***Attorneys for Plaintiffs Herbalife
International of America, Inc. and
Herbalife International, Inc.***

## __DEMAND FOR JURY TRIAL__

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.


Dated: June 19, 2018                    Respectfully submitted,


By:      /s/ Joe Tuffaha

Joe Tuffaha
LTL Attorneys LLP
joe.tuffaha@ltlattorneys.com
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Telephone:  213-612-8900
Facsimile:  213-612-3773
joe.tuffaha@ltlattorneys.com

Adam C. Sherman
acsherman@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio  45202
Telephone:  (513) 723-4680
Facsimile:  (513) 852-8468

***Attorneys for Plaintiffs Herbalife International of America, Inc. and Herbalife International, Inc.***